**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| LAIRD A. FAIRCHILD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:12-cv-03937-M |
| | § | |
| DILIP BAROT, | § | |
| | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction, filed by

Defendant Dilip Barot ("Barot") [Docket Entry #3].  For the reasons stated below, the Motion is

**GRANTED in part** and **DENIED in part**.

## I.   BACKGROUND

This action arises from Barot's alleged fraudulent actions in connection with the efforts

of Plaintiff Laird A. Fairchild ("Fairchild") to refinance the development of an apartment

complex in Jacksonville, Florida (the "property").  Cypress Pointe Apartments, LLC ("Cypress

Pointe"), a Florida Corporation, owns the property, and Barot, a resident of Florida, is a

corporate officer of Cypress Pointe.  To finance the property, Cypress Pointe obtained a

$20,400,00 loan from Regions Bank secured by a first lien on the property, and a $1,635,000

loan from HC Cypress Pointe, LLC ("HC Cypress"), secured by a second lien on the property.

Def.'s Mot. Ex. A. at 1.  In 2009, as the housing market collapsed, Cypress Pointe was in danger

of defaulting on its loans.  Pl.'s Resp. Ex. B. at ¶ 2 (Fairchild Decl.).

In early 2010, Fairchild and Barot entered into discussions about finding new investors

and restructuring the terms of the property's financing.  *Id.*  Fairchild claims that as a part of their

business negotiations, Barot sent to him, in Texas, financial statements relating to the property, which Fairchild was to use to find new investors.  Pl.'s Resp. Ex. B. at ¶¶ 3, 7 (Fairchild Decl.). Fairchild further alleges that, unbeknownst to him, the financial statements were false, and were contradicted by a different set of financial records Barot, and others, used internally.  *Id.* at ¶ 4. Upon receiving these financial statements, and at Barot's direction, Fairchild retained a lawyer in Dallas, Texas to represent Cypress Pointe's interests in the refinancing process, and also secured investments in the project by a Texas corporation, Creekwood Capital Corporation ("Creekwood Capital").  *Id.* at ¶¶ 6–7.  Fairchild claims that had he known the financial statements Barot sent him were false, he would not have agreed to work on the project.  *Id.* at ¶ 4.

It appears that the bulk of the work undertaken by Fairchild was completed in February and March of 2010.  Pl.'s Resp. Ex. B1, B2 (email exchanges).  On March 29 and March 30, as the refinacing neared completion, Barot and Fairchild exchanged emails confirming that Cypress Pointe would pay Fairchild $130,000 for his services upon finalizing the refinancing, and that Fairchild would continue to provide asset management services after the deal closed, for an additional fee.  *Id.*

After the work was completed and new investors were secured, the parties executed a written agreement (the "Agreement"), memorializing the arrangement between Fairchild and Cypress Pointe.[1]  *Id.* at 2.  The Agreement purports to mandate arbitration, designates Palm Beach County, Florida as the exclusive venue for arbitration or litigation, and establishes Florida law as the law governing any dispute arising from the transaction.  *Id.* at 3.

Fairchild claims he learned that Barot never intended to pay him, that Barot intentionally misled Fairchild about the property and his willingness to pay Fairchild, and that after Fairchild

---

[1] When the Agreement was formed is unclear.  The first paragraph suggests that the effective date is sometime in March 2010.  But the space for a specific date is blank.  Moreover, the Recitals section indicates that, at the time the Agreement was formed, the referenced closing date,  March 30, 2010, had already occurred.

uncovered the alleged fraud, Barot directed Cypress Pointe not to pay him.  Notice of Removal

Ex. 2 ("Complaint") ¶¶ 18–22.  Fairchild sued Barot in state court for fraud, unjust enrichment,

and tortious interference with the contract between Fairchild and Cypress Pointe.  *Id.* at ¶¶ 24–

39.  Barot removed the action and then moved to dismiss, claiming that this Court lacks personal

jurisdiction over him.

## II.   LEGAL STANDARD

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant,

and the exercise of such jurisdiction by the forum is consistent with due process. *Latshaw v.*

*Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Texas long-arm statute reaches to the limits of

due process, and, therefore, a court need only determine whether the exercise of personal

jurisdiction over the moving defendant is consistent with due process. *Guardian Royal Exch.*

*Assurance, Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The Due

Process Clause of the Fourteenth Amendment to the United States Constitution permits the

exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has

purposefully availed itself of the benefits and protections of the forum state by establishing

"minimum contacts" with the forum state, and (2) the exercise of jurisdiction over that defendant

does not offend "traditional notions of fair play and substantial justice." *Panda Brandywine*

*Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (quoting *Alpine View Co.*

*v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)).

When personal jurisdiction is challenged and where, as here, no evidentiary hearing

occurs, the party seeking to invoke jurisdiction must make a prima facie showing of jurisdiction,

with the court resolving all disputed facts in favor of jurisdiction.  *Luv N' Care, Ltd. v. Insta–*

*Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  When determining whether the plaintiff has made a prima facie case, the court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method, but must disregard conclusory allegations.  *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *Panda Brandywine Corp.*, 253 F.3d at 869.  Furthermore, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."  *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (citation omitted).

There are two categories of personal jurisdiction: general and specific.  *See Mink v. AAAA Dev.*, 190 F.3d 333, 336 (5th Cir. 1999).  General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.  *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).  For specific jurisdiction to exist, the plaintiff's claims must arise out of or be related to his contacts with the forum state.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).  The plaintiff carries the burden to secure jurisdiction over the defendant with respect *to each cause of action asserted*.  *BeautiControl, Inc. v. Burditt*, No. 3:01-cv-0744-M, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001).  Consequently, the court must separately conduct a "minimum contacts" analysis for each cause of action asserted.

### III.   DISCUSSION

A.  <u>General Jurisdiction</u>

Fairchild has not made a prima facie showing to support the exercise of general jurisdiction over Barot.  General jurisdiction exists when a non-resident's contacts with the

forum state are substantial, continuous, and systematic. *Helicopteros*, 466 U.S. at 414–19. The

Fifth Circuit has reiterated that the "continuous and systematic contacts test is a difficult one to

meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys.*

*Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (internal citations omitted).

Applying these principles, Barot, as an individual, does not have sufficient systematic and

continuous contacts with Texas to establish general jurisdiction. *See Helicopteros*, 466 U.S. at

414–19.  Other than for a few months in 1983, Barot did not live in Texas, and, in his individual

capacity, and he did not do any of the following in Texas: own real property, maintain bank

accounts, maintain a registered agent for service of process, pay taxes, conduct business, or

maintain a mailing address.  Def.'s Mot. Barot Decl. at 1.

Fairchild contends that one of Barot's companies, Etech, Inc. ("Etech") has continuous

and systematic contacts with Texas, and that its contacts should be imputed to Barot.  The Court

rejects this argument.  With limited exceptions, the fiduciary shield doctrine prohibits a court

from exercising personal jurisdiction over an individual based solely on jurisdiction over the

company with which the individual is associated.  *See Stuart v. Spademan,* 772 F.2d 1185, 1197

(5th Cir. 1985).  This shield may be pierced if the individual and the company are alter egos, but

Fairchild has not pled facts that, even taken as true, would support a conclusion that Barot is the

alter ego of Etech.

Fairchild argues that a Florida state court order collaterally estops Barot from invoking the

fiduciary shield, but Fairchild did not produce a copy of the alleged order.  Instead, Fairchild

simply attached a proposed amended complaint in another Florida lawsuit that alludes, without

citation, to a state court ruling that Etech and Barot were alter egos.[2]  Without seeing the order,

---

[2] Barot alleges that the Florida lawsuit in which the amended complaint was proposed was later dismissed with
prejudice.

the Court cannot determine whether it has any preclusive effect, and this Court has no evidence from which it can conclude that Etech and Barot are alter egos, so that Etech's activities are imputed to Barot.  Thus, Fairchild has not met its burden of establishing general jurisdiction over Barot.

Furthermore, the citationless reference to a Florida state court order holding that Etech and Barot are alter egos, found only in a proposed amended pleading, does not provide the "colorable basis for jurisdiction" necessary for the Court to authorize jurisdictional discovery. *See Ellis v. Fortune Seas, Ltd.*, 175 F.R.D. 308, 312 (S.D. Ind. 1997) (collecting authority). Thus, Fairchild's request for such discovery is **DENIED**.

B.  Specific Jurisdiction

Specific jurisdiction is established when a defendant's contacts with the forum state "arise from, or are directly related to the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).  A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352 (5th Cir. 2001).  Similarly, a single communication directed at the forum can establish personal jurisdiction where the content of that communication gives rise to an intentional tort for which jurisdiction is sought. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

i.  Fraud

In *Wien Air*, a defendant directed communications—letters, faxes, and phone calls—to Texas, and the contents of those communications allegedly contained fraudulent misrepresentations and promises.  The Fifth Circuit concluded that those misrepresentations directed at Texas gave rise to the intentional torts asserted in the lawsuit, and that "this alone constitutes purposeful availment" sufficient to establish specific jurisdiction. *Id.* at 213.

The Fifth Circuit reaffirmed this approach in *Lewis v. Fresne*, 252 F.3d 352, 358–59 (5th Cir. 2001). In *Lewis*, defendant Fresne, plaintiff's stockbroker, convinced plaintiff to loan a company $650,000. To persuade plaintiff to make the loan, Fresne allegedly made material misrepresentations about the investment in a phone call to plaintiff in Texas. Another defendant who participated in the phone call, Rosenfeld, failed to correct the allegedly false statements, and later sent to plaintiff, in Texas, loan documents containing fraudulent misrepresentations about the investment. A third defendant, Farkas, signed and sent security agreements to plaintiff in Texas that fraudulently represented the terms of the investment. The court determined that these communications, which formed the basis of plaintiff's fraud claims, constituted "sufficient evidence of minimum contacts to justify personal jurisdiction" over each of the individual defendants. *Id.*

As in *Wien Air* and *Lewis*, Fairchild's fraud claim is based on allegedly fraudulent communications—false financial statements, and emails and phone calls assuring Fairchild that he would be paid and should continue working. Barot directed those communications to Fairchild in Texas. As did the Fifth Circuit in *Wien Air* and *Lewis*, this Court concludes that those communications form the very foundation of Fairchild's fraud claim, and that by directing them at Texas, Barot purposely availed himself of the laws of Texas.

Barot relies on this Court's opinion in *Breckenridge Enterprises* for the proposition that allegations of fraud can support specific jurisdiction only if they satisfy the particularity requirements of Fed. R. Civ. P. 9(b), and more importantly, that the requisite detail must be found *in the complaint itself*, not in subsequently submitted briefs or evidence. 2009 WL 1469808, at *7. The Court has reconsidered this position. It is well established that courts may rely on "affidavits, interrogatories, depositions, oral testimony, or any combination of the

recognized methods of discovery" to inform the jurisdictional inquiry. *Thompson*, 755 F.2d at 1165; *see Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). The subject Motion is based not on the sufficiency of the pleadings, but on the alleged lack of minimum contacts with the forum. The allegations of the Complaint, coupled with the evidence submitted in conjunction with the Motion briefing, establish a prima facie case of fraud based on communications directed to Texas. Thus, Barot has the requisite minimum contacts with Texas to give rise to specific jurisdiction over him.

    ii.   Unjust Enrichment

    Unjust enrichment applies as a theory of recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Fairchild's claim rests on the allegation that Barot "intentionally and improperly attempted to gain the benefit" of Fairchild's services "through the actions" described in the Complaint. Compl. ¶¶ 30–33. It appears, then, that the claim arises from the same alleged misrepresentations underlying the fraud claim. Thus, the Court can exercise jurisdiction over Barot for this claim for the same reasons detailed in the fraud discussion above.

    Nevertheless, to provide guidance to the parties, the Court notes two potentially fatal problems with the underlying claim that may ultimately doom it. First, it is not clear that unjust enrichment actually functions as an independent cause of action. *Compare Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("Unjust enrichment is an independent cause of action."), *with Ed & F Man Biofuels Ltd. v. MV FASE*, 728 F. Supp. 2d 862, 869 (S.D. Tex. 2010) (Although the "Texas Supreme Court has spoken of a 'cause of action' for unjust enrichment, . . . the courts in the Fifth Circuit and a number of Texas

courts in examining the case law have concluded that rather than an independent cause of action, it is a 'theory of liability that a plaintiff can pursue through several equitable causes of action, including money had and received.'" (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–85 (Tex. 2000); *Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539, 560–61 (N.D. Tex. 2009)).

Second, "[u]njust enrichment is an implied-contract theory" that is "unavailable when an express contract covers the subject matter at issue." *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723 (Tex. App.—Houston [1st Dist.] 2011, no pet.). At first blush, it seems that there was a valid, express contract between Cypress Pointe and Fairchild that covers the very services for which Fairchild claims Barot was unjustly enriched. Indeed, if there was no contract, Fairchild would have no basis to assert a claim for tortious interference with a contract. Nevertheless, the Court cannot conclude, based on the limited facts in the state court pleading, that Fairchild's claims necessarily arise out of the transaction covered by the Agreement. Moreover, the Court notes that the only copy of the Agreement filed with the Court appears to be signed by Barot, but not by Fairchild.

iii.   Tortious Interference with a Contract

To succeed on a claim for tortious interference with a contract, a plaintiff must show that it had a valid contract with which the defendant intentionally interfered, and that the interference proximately caused actual damage or loss. *Bunaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002). Here, Fairchild alleges that Barot intentionally interfered with Fairchild's contract with Cypress Pointe by ordering Cypress Pointe not to pay Fairchild, as contractually required. Compl. ¶ 27. The alleged tortious communications, therefore, were between Barot and Cypress Pointe, not between Barot and Fairchild. Unlike the misrepresentations that give rise to the fraud

and unjust enrichment claims, there is no indication that Barot directed these communications to Texas.  Indeed, given that both Barot and Cypress Pointe are based in Florida, it seems likely the communication was made there.

While the effects of the tortious interference extended to Texas, "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air*, 195 F.3d at 212.  Accordingly, a court does not have specific personal jurisdiction over a defendant alleged to have tortiously interfered with a contract, where that interference happened outside of the forum state.  *Moncrief Oil Intern., Inc. v. OAO Gazprom*, 332 S.W.3d 1, 13–14 (Tex. App.—Fort Worth 2010, pet. granted).  In *Moncrief Oil*, a Texas oil company, Moncrief, and a California company, Occidental, had established a joint venture.  A Russian gas company, Gazprom, allegedly threatened Occidental in California, causing Occidental to terminate its relationship with Moncrief.  The appellate court concluded that there was no specific jurisdiction over Gazprom with respect to Moncrief's claim of tortious interference with contract, because the interference happened in another state.  This was true regardless of the fact that the tort was directed at a business in Texas, and its injurious effects would be felt in Texas.[3]

Here, too, Fairchild has failed to plead that the acts comprising tortious interference occurred in, or were directed at, Texas.  Indeed, it seems unlikely that they were, given that both Barot and Cypress Pointe are Florida residents.  Thus, Fairchild has not pled a prima facie case for asserting personal jurisdiction over Barot for the tortious interference claim.

---

[3] *But see Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186 (5th Cir. 1984).  In *Union Carbide*, the Fifth Circuit ruled that a defendant's out-of-state interference with a contract established personal jurisdiction because it was directed at, and "causally related to injury in," Texas.  *Id.* at 1190.  Nevertheless, as noted in *Moncrief Oil*, the Texas Supreme Court appears to have explicitly rejected this "directed-a-tort-at-Texas" basis for personal jurisdiction in *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex. 2005), which was decided two decades after *Union Carbide*.  The Texas Supreme Court granted a petition to review *Moncrief Oil*, heard oral arguments on February 6, 2013, and may soon resolve any remaining ambiguity.

C.   Fiduciary Shield Doctrine

Barot's fiduciary shield defense is based on the argument that he made all of the communications and actions underpinning the allegations in his capacity as a representative of Cypress Pointe, not as an individual.  As discussed in section III.A. *supra*, the fiduciary shield doctrine generally prohibits a court from exercising personal jurisdiction over an individual for actions taken in a corporate capacity.  *See Stuart,* 772 F.2d at 1197.  However, "corporate officers are not shielded from the exercise of specific jurisdiction for fraudulent or tortuous [sic] acts for which they may be liable." *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 917 (Tex. App.—Dallas 2005, no pet.) (citing *Calder v. Jones*, 465 U.S. 783, (1984); *Tuscano v. Osterberg*, 82 S.W.3d 457, 467–68 (Tex. App.—El Paso 2002, no pet.)).  In other words, the fiduciary shield doctrine "does not protect a corporate officer from specific personal jurisdiction as to intentional torts or fraudulent acts." *Cerbone v. Farb*, 225 S.W.3d 764, 769 (Tex. App.— Houston [14th Dist.] 2007, no pet.); *Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 795 (5th Cir. 2007) (unpublished).

Fraud and unjust enrichment are intentional torts, and the alleged tortious actions underlying Fairchild's claims are rooted in fraud.  Accordingly, the fiduciary shield does not prohibit the Court from exercising personal jurisdiction over Barot.

D.   Traditional Notions of Fair Play and Justice

Once a plaintiff establishes minimum contacts, the burden shifts to the defendant to make a "compelling case" that exercising jurisdiction would offend "traditional notions of fair play and substantial justice."  *Burger King Corp.*, 471 U.S. at 477 (1985).  In determining whether the standard has been met, courts are to consider (1) the burden on the defendant having to litigate in

the forum, (2) the forum state's interests in the lawsuit, (3) the plaintiff's interests in convenience and effective relief, (3) the judicial systems' interest in efficient resolution, and (4) the state's interest in furthering fundamental social policies.  *Wien Air*, 195 F.3d at 215.

Barot has not made a compelling case that asserting personal jurisdiction over him would be unfair or unjust.  Barot has significant contacts with Texas through his companies, and his burden of defending this lawsuit in Texas does not outweigh the rest of the factors, all of which favor Fairchild.  Indeed, "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Id.*

The fact that Fairchild agreed to Florida jurisdiction through the Agreement does not alter the equation.  As mentioned, Barot did not provide the Court with a copy of the Agreement signed by Fairchild.  Moreover, it is not clear that the contractual provision would apply to Fairchild's extra-contractual claims.  Finally, while a valid forum selection clause may weigh in favor of transfer under 28 U.S.C. § 1404(a), and may provide a basis for jurisdiction over Fairchild in Florida, it does not render jurisdiction in Texas fundamentally unfair.  Accordingly, requiring Barot to defend himself in Texas does not offend traditional notions of fair play and substantial justice.

IV.   CONCLUSION

The Court has personal jurisdiction over Barot with respect to Fairchild's fraud and unjust enrichment claims, but not his claim for tortious interference with contract.  Accordingly, the Motion to Dismiss is **DENIED in part** and **GRANTED in part**.  In the interest of judicial economy, the parties shall confer and submit a joint status report within fourteen days, advising

the Court whether Barot waives his personal jurisdiction objections in Texas for the tortious

interference claim, or whether Fairchild will consent to transfer the entire action to the Middle

District of Florida, where presumably this action could have been brought initially.

**SO ORDERED**.

May 21, 2013.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**